IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DONTEZ FORTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:17-CV-601-ALB |
| ) | |
| CITY OF MONTGOMERY, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Dontez Forte ("Forte") filed a three-count complaint alleging that Defendants City of Montgomery ("Montgomery") and D.J. Dick ("Dick") defamed him and violated his federal Fourteenth Amendment rights to equal protection of the laws and procedural due process when they terminated him against the weight of the evidence.

There are three counts at issue.[1] Count 2 alleges that Dick defamed Plaintiff by way of both libel and slander, including an allegation of per se defamation. (Doc 1-1 ¶¶21-23). Count 3 realleges that Plaintiff was defamed and requests that the Court enjoin the City of Montgomery from publishing in any way the information it relied upon in firing him. (Doc. 1-1 ¶¶24-26). Count 4 alleges both that the process of Plaintiff's termination violated his procedural due process rights and further that he was denied equal protection of the laws because, although another member of the fire department had allegedly lied, no discipline had occurred in that instance. (Doc. 1-1 ¶¶27-30). This matter comes before the Court on Defendants' motion for summary judgement on all three counts. (Doc. 15). Upon consideration, the motion is GRANTED as to all counts.

---

[1] Count 1 of the original complaint asks a state court to grant a writ of certiorari. Because Defendants did not remove that count to this Court, the analysis will begin at Count 2.

# SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also* Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324. Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B).

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

# BACKGROUND

The Montgomery City Fire Department has a practice of offering infrequent, optional exams which can be taken by those firefighters who are Sergeants and wish to become Lieutenants. On August 11, 2015, J.L. Petrey, the Chief of Staff of the Montgomery Fire Department emailed a memo to all fire rescue personnel advising them that fourteen Sergeants, including Forte, were candidates for the rank of Lieutenant and were scheduled to test for the rank on August 19th at 7:45 AM. However, Forte's shift on that day ended at 8 AM. Therefore, Forte discussed in advance with his superior officer, Lieutenant Dick, his need to leave early. Forte and Dick had this conversation on the 18th and both knew that any delay in Forte's arrival the next morning would result in his disqualification from contention.

On the 19th, at 7:20 AM, District Fire Chief Hackett authorized Dick to let Forte leave for the test. Despite this, Forte claims that Dick didn't relieve him until 7:45 AM and he ended up arriving at the test location at approximately 7:53 AM. As he was late, the proctor would not let him take the test. Forte told the proctor that he had tried to leave in order to get there on time, but his superiors at the station refused to authorize his absence until 7:45 AM. The fire department hierarchs called around the horn in order to determine whether Forte's supervisors had prevented him from leaving until 7:45 for a 7:45 test. These same men testified that such prevention would lead to strict discipline. The fire department brass concluded that Forte had

lied about his supervisors refusal to let him out until 7:45 and, due to a fire department regulation prohibiting lying, recommended to the Mayor that he be fired. Forte was terminated on December 5th and the Montgomery City-County Personnel Board upheld his termination.

## DISCUSSION

Plaintiff's argument on all the relevant counts in the complaint can be summarized as follows: the decision of the Board to fire Forte was arbitrary, capricious, and against substantial evidence and Forte was defamed during and after the proceedings. The central assertion supporting these allegations is that Dick lied when he told Chief Boeling that he relieved Forte around 7:20. Plaintiff's only support for this assertion is evidence that Dick mistakenly thought that the test started at 8 AM.[2] (Document 21 at 2-3). This is Plaintiff's purported smoking gun. Even though Dick said he relieved Forte at around 7:20 AM, Plaintiff argues that Forte's recollection of being relieved at 7:45 is more believable because Dick believed the test started at 8 AM. *Id.* After all, Plaintiff argues, if it only takes 10 minutes to drive to the testing center, why would Dick have dismissed his subordinate 30 minutes earlier than necessary? Unfortunately, this piece of

---

[2] In the memo where Dick mistakenly recalled the beginning of the test as 8:00 AM, he still wrote that he had relieved Forte at 7:20.

circumstantial evidence on its own is not enough to allow Plaintiff to succeed on any of his claims.

Plaintiff points to the transcript of his post-termination hearing before the Personnel Board and argues that it is effectively illegal for his superiors to disagree with his version of events. To wit, Plaintiff states that, "Defendant Lt. Dick defamed the Plaintiff…He made false defamatory statements to another concerning the Plaintiff that the Plaintiff was not truthful." (Document 21 at 7). But neither common-law defamation nor the Fourteenth Amendment protects an employee against the consequences of his boss's opinion, especially when it is announced in a judicial or quasi-judicial proceeding. For the following reasons, Plaintiff's claims fail.

### A. Rooker-Feldman Doctrine Does Not Bar Federal Court Review.

Defendants erroneously argue that this Court is precluded from coming to any determination as to the merits of Plaintiff's claims as a result of the *Rooker-Feldman* Doctrine. The Supreme Court of the United States has held that federal courts other than the Supreme Court may not function as a reserve appeal system for final state court judgments that litigants are unhappy with. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S. Ct. 1303, 1311 (1983). This is called the *Rooker-Feldman* Doctrine. Although ordinarily the Doctrine also prevents federal courts from hearing

new claims that are inextricably intertwined with the original ones, in the Eleventh Circuit, the case may still be heard if the plaintiff is seeking to litigate a federal claim that he could not raise in state proceedings. *Powell v. Powell*, 80 F.3d 464, 466 (11th Cir. 1996).

Unfortunately for Defendants, Plaintiff's only proceedings thus far have been before the Montgomery City-County Personnel Board, which, while competent to hear his appeal regarding employment, has no authority to hear defamation claims or those arising under the U.S. Constitution. The *Rooker-Feldman* doctrine does not help Defendants.

## B. **Defamation (Count 2) Fails Because of Privilege.**

Plaintiff's defamation claim fails. The elements of a cause of action for defamation in Alabama are: 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication of that statement to a third party, 3) fault amounting at least to negligence on the part of the defendant, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003).

Plaintiff has not plead enough facts to support a plausible scenario where the statements made by Dick were not privileged. In Alabama, absolute privilege

attaches to all hearings that are judicial, legislative, or quasi-judicial in nature. *Webster v. Byrd*, 494 So. 2d 31, 34 (Ala. 1986). In fact, the Alabama Supreme Court has specifically held that, with respect to local Personnel Board proceedings, communications made to individuals with an official interest in the termination of the plaintiff are absolutely privileged. *Barnett v. Mobile Cty. Pers. Bd.*, 536 So. 2d 46, 51 (Ala. 1988). The guiding star of this area of Alabamian jurisprudence is whether the "communication is prompted by duty owed either to the public or to a third party…[and whether it is] made in good faith and without actual malice." *Berry v. City of New York Ins. Co.*, 210 Ala. 369, 371, 98 So. 290, 292 (1923).

With respect to publication by the Board itself, this immunity applies even when there are "retaliatory, arbitrary, and capricious actions by officials when those actions are related to the filing and adjudication of disciplinary complaints those officials are charged with administering." *D.A.R. v. R.E.L.*, 272 So. 3d 1030, 1041 (Ala. 2018). As for Dick, he was making his statements to third parties only in the context of a duty he owed to the public; in one context he was a firefighter reporting to his superiors regarding a fellow firefighter and in another context to his ultimate superiors on the Personnel Board.

In Alabama, even teacher tenure hearings are quasi-judicial. *Webster v. Byrd*, 494 So. 2d 31, 34 (Ala. 1986). As the Personnel Board hearing was an adversarial

event, replete with attorneys, where the charges against Forte were considered, the Court finds that it qualifies as at least quasi-judicial and clothes all its participants in absolute immunity.

### C. <u>Injunction (Count 3) Fails.</u>

Plaintiff requests the Court enjoin the City of Montgomery from publishing any information about its employment decision concerning him and requests a permanent injunction against the firefighters from ever talking about his termination. These requests imply defamation claims against both the City and the others of Forte's superiors. In the Eleventh Circuit, a district court may grant injunctive relief when the moving party shows that (1) it has a substantial likelihood of success on the merits, (2) irreparable injury will be suffered unless the injunction issues, (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).

There is no indication whatever that Plaintiff has any chance of success on the merits of any claim of defamation against the City or the fire department hierarchs. There will be no success for the same reason that the defamation claim was not successful: privilege. The Supreme Court of Alabama has adopted the holding of

the Supreme Court of the United States that an individual unhappy with a determination made by a federal agency cannot successfully sue the officials responsible for the public release of that determination:

> The Supreme Court, in Butz v. Economou…addressed this issue with respect to an administrative tribunal within the United States Department of Agriculture. The tribunal had issued an administrative complaint alleging that Arthur Economou, a registered merchant, had intentionally failed to [abide] by Department of Agriculture regulations.…After the Department had issued its decision, Economou sued the chief hearing examiner…and several officials associated with the prosecution of the complaint against him…He alleged that the defendants had made the administrative complaint available to third parties…and that the defendants had issued a press release reporting that he had committed a violation of Department regulations. The defendants responded to these allegations with claims of quasi-judicial immunity. The Supreme Court [upheld dismissal of the case] stating that administrative officials performing duties that are characteristic of the judicial process are entitled to quasi-judicial immunity.

*Mooneyham v. State Bd. of Chiropractic Examiners*, 802 So. 2d 200, 206 (Ala. 2001).

Under precedent from the Supreme Court of the United States as well as the Supreme Court of Alabama, the publication of the basis for the Personnel Board's termination decision is protected and, because that protection eliminates any chance of success on the merits, no injunctions will issue.

### D. **Section 1983 (Count 4) Fails.**

Neither of Plaintiff's claims under §1983 withstand scrutiny. Even were it the case that Defendants are incorrect in their recall of events and Plaintiff is entirely correct that he was prevented from taking the test in violation of department policy, the Court would still not be able to accord constitutional relief if an adverse credibility determination has been made by a Personnel Board.

1. Equal Protection Claim

In the Eleventh Circuit and in Alabama, it is axiomatic that unless the defendant has the intent to discriminate, a plaintiff's equal protection rights cannot be violated. *GJR Investments, Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998). Unfortunately for Plaintiff, the words "discrimination" and "discriminate" appear in neither his complaint nor his brief opposing summary judgment. However, the avenue of discrimination by implication is still open to him.

The plaintiff seeks to prove implicit discrimination by alleging that Montgomery Fire Department Chief Harold Bellinger once contradicted himself while giving testimony concerning a completely unrelated case before the Personnel Board and suffered no adverse employment action. The cloak of equal protection under the Fourteenth Amendment is a standing doctrine that those who are similarly situated should be treated similarly. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). The government

machinery at any level may not draw distinctions between people that are irrelevant to a legitimate governmental objective. *Lehr v. Robertson*, 463 U.S. 248, 265, 103 S. Ct. 2985, 2995, 77 L. Ed. 2d 614 (1983).

Here, Defendant is assuredly safe. Firstly, the Chief of the Fire Department and a rank and file firefighter are not similarly situated in their positions. A Fire Chief may be allowed more discretion than the common fireman. Additionally, the circumstances of the two alleged omissions are nothing alike. Even if Plaintiff's allegations are entirely correct, the Fire Chief is guilty of contradicting himself regarding an administrative matter, while Forte might be guilty of framing his superior officer for a disciplinary violation. The circumstances and consequences of the omissions are nowhere close to the same.

Therefore, since Plaintiff has not sufficiently alleged that there was discriminatory intent on the part of the city, either by showing that there were overt discriminatory actions or by showing implicit discrimination through disparate treatment of those similarly situated, his claim fails.

    2. Procedural Due Process

In order to comport with due process requirements in cases involving public employees, even those cases where the employee is dismissed for cause, the employee must be accorded a limited pre-termination hearing. *Cleveland Bd. of Ed.*

*v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Here, it is beyond dispute that Forte received both pre and post-termination hearings.

Defendant, without specifying where, when, or before whom it took place, claims it is undisputed that Forte was provided with a pre-termination hearing. (Doc. 16 at 6). Plaintiff appears to admit it took place when he writes that "mistaken facts were relied upon for his termination hearing before the Mayor." (Doc. 21 at 5). Plaintiff then repeats the following sentence in two consecutive paragraphs: "By determining that charges would be brought against Dontez Forte on facts that did not include accurate charges, the Montgomery City-County Personnel Board denied Forte a fair and adequate pre-termination hearing." *Id.* at 6-7. Further, Plaintiff asserts that "the decision to terminate Sargent Forte as arbitrary capricious (sic) and contrary to substantial evidence." *Id.*

Plaintiff's first criticism of the pre-termination hearing, that the "charges were based on facts that did not include accurate charges," is easily dispatched; the review of a plaintiff's adequate process claim does not include an inquiry into the credibility determinations of state agencies and the facts that they drew from those determinations. *State Pers. Bd. v. State Dep't of Mental Health & Mental Retardation*, 694 So. 2d 1367, 1374 (Ala. Civ. App. 1996). The Court will similarly leave undisturbed credibility determinations by federal administrative agencies.

*Anders v. Comm'r of Soc. Sec.*, No. 5:15-CV-01977-JHE, 2017 WL 1178010, at 3 (N.D. Ala. Mar. 30, 2017).

Plaintiff's second criticism is that the proceedings were arbitrary and capricious. Proceedings are not arbitrary and capricious if the decision-maker has articulated an explanation for the action that includes a rational connection between the facts found and the choice made. *Cox v. Mobile Cty. Bd. of Sch. Comm'rs*, 157 So. 3d 897, 900 (Ala. Civ. App. 2013); *McKinney v. Pate*, 20 F.3d 1550, 1558 (11th Cir. 1994). Although the official Board decision states only that it "finds the evidence supports the decision…to terminate the employment of Dontez Forte" in barely half a page, it is beyond question that the Personnel Board made a rational connection between the facts found and the choice made. (Doc. 15-1 at 2). In this case the Board heard several fire department officers claim that Forte had been correctly informed he could leave at 7:20, with at least two of them taking part in the process of informing, and only Forte claiming otherwise. (Doc. 15-1). The only support for Forte's recollection is that Dick thought the test started later, which does not come close to establishing that the Personnel Board erred. The Personnel Board's decision was not arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendants Dick and the City of Montgomery's Motion for Summary Judgment (Doc. 15) is **GRANTED** as to all counts.

2. Plaintiff's counsel died during the pendency of this matter. The Alabama State Bar trustee is ORDERED to attempt to provide a copy of this opinion to Plaintiff at his last known address. The Court will delay the entry of judgment for 30 days so that Plaintiff has enough time to secure counsel for a motion to reconsider or for an appeal. After 30 days, the Court will enter a final judgment in accordance with this memorandum opinion.

**DONE** and **ORDERED** this 27th day of September 2019.

          /s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE